FILED

2026 Jun-01 PM 10:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ALABAMA

### SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROBERT P. FOWLER**, | ) | |
| | ) | |
| *Plaintiff and Counterclaim Defendant*, | ) ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **JUSTICE FAMILY GROUP, LLC**; | ) | **CV:2:23-cv-01180-GMB** |
| **BLUESTONE RESOURCES, INC.**; | ) | |
| **and SOUTHERN COAL** | ) | |
| **CORPORATION**, | ) | |
| | ) | |
| *Defendants and Counterclaim Plaintiffs*, | ) ) | |
| | ) | |
| — and — | ) | |
| **GREENBRIER HOTEL CORP.**; | ) | |
| **and JAMES C. JUSTICE, III**, | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFF'S MOTION FOR ENTRY OF DAMAGES AND FINAL
JUDGMENT AND ACCOMPANYING MEMORANDUM OF LAW**

1

**COMES NOW** the Plaintiff, Robert P. Fowler, pursuant to the Court's May 11, 2026, Order (Doc. 131) and moves the Court for an entry of Final Judgment in this case, along with a determination of the amount of his breach of contract damages, attorney's fees and costs, and offset for Defendants' counterclaim. Based on the Court's ruling on the parties' cross-motions for summary judgment (Doc. 73) and the jury's verdict filed on May 7, 2026 (Doc. 129), all claims have now been adjudicated against all parties, with the exception of the breach of contract damage amount and Plaintiff's accompanying attorney's fees and expenses. Accordingly, based on the following submission, Plaintiff requests that a Final Judgment be entered for breach of contract damages in the amount of $3,241,996.37,[1] health insurance benefits in the amount of $26,340.00, attorney's fees in the amount of $332,632.50, and costs in the amount of $15,909.06 for a total award in favor of Plaintiff in the amount of **$3,616,877.63**.

## I. INTRODUCTION

On October 2, 2025, the Court ruled on the parties' cross-motions for summary judgment (Doc. 73) granting Plaintiff's Motion for Summary Judgment on the breach of contract claim and awarding associated liquidated damages. Doc. 73.

---

[1] This amount in includes the Termination Payout and interest in the amount of $3,507,452.05, less the counterclaim setoff amount of $265,455.98.

The Court also granted Defendants' motion for summary judgment on their counterclaim for the repayment of a signing bonus resulting from Plaintiff's termination of the employment agreement. Doc. 73. Thereafter, a jury trial was held on Plaintiff's fraud claims and a jury verdict was entered in Defendants' favor on May 7, 2026 (Doc. 129). With the grant of the cross-motions for summary judgment and the entry of the jury verdict, all claims in the case have now been adjudicated against all parties, with the exception of the breach of contract damage amount and Plaintiff's accompanying attorney's fees and expenses, along with the set-off amount for the counter-claim. Now that all claims have been adjudicated, Plaintiff is requesting that Final Judgment be entered on his behalf in the amount of **$3,616,877.63** for breach of contract Termination Payout, which includes, his health insurance benefits for a year, attorney's fees and expenses and a reduction in the amount of $265,455.98 as the setoff amount for Defendants' counterclaim.

## II. ARGUMENT

### A. The Court's Findings

As the Court is aware, the contract at issue is the employment agreement between the Plaintiff, Rob Fowler, and the Corporate Defendants, Justice Family Group, Bluestone Resources, and Southern Coal. (PX 1).

The Court found that the Corporate Defendants breached the employment agreement by failing to (1) pay Fowler's cost-of-living raise on January 1, 2023; (2) pay his annual bonus on March 31, 2023; (3) reimburse his expenses within 60 days; and (4) make the termination payment and fund one year of health insurance after his resignation for a Good Reason, as defined in the agreement. (Doc. 73 at 21). The Court also found the breaches by Defendants were material (Doc. 73, p. 24). The Court further found that Plaintiff was entitled to the $3,000,000.00 termination payment as provided for in §8(b) of the employment agreement. (Doc. 73, pp. 27-30; PX 1, §8(b)).

## B.     Plaintiff's Damages

Based on the Corporate Defendants' breaches, Plaintiff is owed (1) the $3,000,000.00 termination payment as liquidated damages as set forth in §8(b) of the contract; (2) the cost of health insurance and benefits for the 12-month period following Plaintiff's termination (June 3, 2023 to June 3, 2024), as also set forth in §8(b); (3) interest on those amounts; and (4) reasonable attorney's fees and expenses as provided under §14(e) of the employment agreement.

### 1.     The Termination Payment

As the Court found, Plaintiff is entitled to the $3,000,000.00 Termination Payment as set forth in §8(b) of the employment agreement. The language in the

agreement is straightforward as the Termination Payment and beginning on June 15, 2023, the Corporate Defendants owed Plaintiff a $3,000,000.00 Termination payment, payable in 13 bi-weekly installments. PX 1, §8(b).

Based on this language, each installment payment was equal to $230,769.23. The installment due dates were as follows: 6/15/23; 6/29/23; 7/13/23; 7/27/23; 8/10/23; 8/24/23; 9/7/23; 9/21/23; 10/5/23; 10/19/23; 11/2/23; 11/16/23; 11/30/23. Prejudgment interest is calculated at 6% per annum. Ala. Code § 8-8-1. Plaintiff calculates interest on the payments as follows:[2]

- First installment (6/15/23) (1113 days): $230,769.23 \times 0.06 \times (1113/365) \approx$ $42,221.29;
- Second installment (6/29/23) (1099 days): $230,769.23 \times 0.06 \times (1099/365) \approx$ $41,690.20;
- Third installment (7/13/23) (1085 days): $230,769.23 \times 0.06 \times (1085/365) \approx$ $41,159.11;
- Fourth installment (7/27/23) (1071 days): $230,769.23 \times 0.06 \times (1071/365) \approx$ $40,628.03;
- Fifth installment (8/10/23) (1057 days): $230,769.23 \times 0.06 \times (1057/365) \approx$ $40,096.94;
- Sixth installment (8/24/23) (1043 days): $230,769.23 \times 0.06 \times (1043/365) \approx$ $39,565.86;
- Seventh installment (9/07/23) (1029 days): $230,769.23 \times 0.06 \times (1029/365) \approx$ $39,034.77;
- Eighth installment (9/21/23) (1015 days): $230,769.23 \times 0.06 \times (1015/365) \approx$ $38,503.69;

---

[2] PX 2 - Chart of interest owed on Termination Payment.

- Ninth installment (10/05/23) (1001 days): $230,769.23 \times 0.06 \times (1001/365) \approx$ $37,972.60;
- Tenth installment (10/19/23) (987 days): $230,769.23 \times 0.06 \times (987/365) \approx$ $37,441.52;
- Eleventh installment (11/02/23) (973 days): $230,769.23 \times 0.06 \times (973/365) \approx \$36,910.43$;
- Twelfth installment (11/16/23) (959 days): $230,769.23 \times 0.06 \times (959/365) \approx$ $36,379.35;
- Thirteenth installment (11/30/23) (945 days): $230,769.23 \times 0.06 \times (945/365) \approx \$35,848.26$.

Based upon the calculations in Exhibit 2, the total amount of interest owed through June 1, 2026 is $507,452.05. This brings the total damages due under the Termination Payment in §8(b) to **$3,507,452.05.**

### 2. Offset for Bonus Repayment

In its summary judgment opinion and Order, the Court held that because Fowler resigned during the first two years of his employment, he is required to re-pay 66% of his sign-on bonus (§5(a)). (Doc. 73 at 34-35). Fowler received a sign-on bonus of $340,000.00. (§5(a)). Based on §5(a), Fowler should repay $224,400.00 of that amount to Defendants. To calculate the offset for damages related to the bonus repayment provision, the Court should apply the following similar analysis: 66% of the sign-on bonus ($340,000) amounts to $224,400.00, due on June 15, 2023. 840 days (June 15, 2023 to June 1, 2026) of 6% interest equals $41,055.98.[2] After combining the principal and interest related to the sign-on bonus, Plaintiff's damages are to be offset by **$265,455.98.** *See* PX 3 – Offset Calculations.

### 3. Health Insurance Benefits

Section §8(b) of the agreement provided that Defendants "shall continue (at its cost) Executive's health benefits for a period of twelve (12) months from the date of termination of Executive's employment. Fowler's termination date was June 3, 2023. It is undisputed that Defendants did not provide Fowler the required benefits. (PX 4 – Ball 69:1-14).

Plaintiff Fowler has provided a declaration indicating that the total value of these benefits is **$26,340.00**. (PX 5).

### 4. Attorney's Fees and Expenses

Section §14(e) of the  employment agreement provides that the payment of attorneys' fees and expenses be paid by "the losing party." (PX 1 § 14(e)). Fowler initiated action based on Defendants' breach of the Agreement and its refusal to pay the Termination Payment and benefits in §8(e).  Fowler has prevailed on that claim and thus, as the prevailing party is entitled to reasonable fees and expenses from Defendants.

Based on the hours expended on this case, the hourly rates appropriate to the attorneys and the paralegal involved, and the application of the standards set forth in *Moultrie v. Wall*, 143 So.3d 128, 136 (Ala. 2013); *Pharmacia Corp. v. McGowan,*

915 So.2d 549, 552-53 (Ala. 2004); *Van Schasck v. AmSouth Bank, N.A.,* 530 So.2d 740,749 (Ala 1988); *Peebles v. Miley,* 439 So.2d 137 (Ala. 1983), which are extremely similar to the federal standards set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988) and *Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 107 S.Ct. 3078 (1987), to the facts of this case, Plaintiff requests an award of $332,632.50 in attorney's fees, and $15,909.06 in costs and expenses for a total amount of $348,541.56 for work performed and expenses incurred in successfully prosecuting the breach of contract claim against the Corporate Defendants. (*See* PX 6 p. 18 (Declaration of Rocco Calamusa, Jr.)).

### a. The Relevant Factors

The determination of the reasonableness of an attorney's fee is within the sound discretion of the Court. *Moultrie* at 136. Under Alabama law courts utilize the following twelve factors to determine whether a requested attorney's fee is reasonable (the "*Peebles'* Factors"). *Id.* These factors are:

> "'(1) [T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment;

and (12) the time limitations imposed by the client or by the circumstances.'"

*Moultrie* at 136; *Peebles* at 141-142.

The first measurement of reasonableness when assessing a motion for attorney's fees under Alabama state law is the "time consumed." *CBS Holdings, LLC v. Hexagon U.S. Fed., Inc.,* 2025 Ala. LEXIS 73, *20 (Ala. 2025). The "time consumed" method is comparable to the lodestar method used in federal courts, and cases applying the two methods should be construed consistently. *Id.* at *20, n.4. Fee applications under the "time consumed" method should be supported by sufficiently detailed billing records and a well-supported reasonable billing rate. *Id.* at *20. Once the Court reviews this evidence, then it might consider the other factors to determine a reasonable fee. *Pharmicia,* 915 S.2d at 552-553.

### i. The Time Expended

As set forth in the Declaration of Rocco Calamusa, Jr., and the accompanying billing records, the attorneys representing Plaintiff expended the following hours in their successful prosecution of Mr. Fowler's breach of contract claim:

| | |
|---|---|
| Attorney Rocco Calamusa, Jr. | 229.8 hours |
| Attorney D.G. Pantazis | 223.4 hours |
| Attorney Kevin W. Jent | 130.5 hours |

*See* PX 6 p. 15 ¶ 31; EX B to PX 6 (Wiggins Childs Billing Records). The hours worked by Plaintiff's counsel and submitted to the Court on the breach of contract claim were carried out as efficiently as possible, mindful of duplication of time or effort and were limited to work performed in the successful prosecution of that particular claim. PX 6 pp. 15-16 ¶¶ 32-33. Plaintiff's counsel has not submitted time and is not seeking to be paid for time expended on claims other than the breach of contract claim.

Plaintiff's attorneys used billing judgment standards and limited the number of hours billed and submitted to the reasonable amount of time required to perform the legal services which contributed to obtaining the results obtained. PX 6 pp. 15-16 ¶ 33. The reasonableness of the time consumed in this case is supported by the Declaration of Rocco Calamusa, Jr., who has personal knowledge of the time worked by Plaintiff's attorneys and reviewed all records. PX 6 p. 14 ¶ 29. Attorney Calamusa testified that "all of the time submitted to the Court for compensation was reasonably necessary to give Plaintiff the best chance for a favorable outcome on his breach of contract claim, which was obtained. The time submitted is of the kind and character that firms would normally bill to hourly paying clients, as well as time that we normally track and seek to be paid at the conclusion of a successful contingency litigation in cases of this type." PX 6 p. 16 ¶ 34. Attorney Calamusa has practiced law since 1993 and has been a partner/member of the Wiggins, Childs firm since

2000.  PX 6 p. 1 ¶ 1.  Calamusa oversees and supervises other attorneys at the firm and serves on the firm's Board of Managers.  *Id.*  Calamusa has extensive experience in litigating civil matters, primarily in the employment law area.  PX 6 pp. 2-3, ¶¶ 2-4.

The reasonableness of the time expended by Plaintiff's counsel is also supported by the Declaration of Birmingham attorney Wilson F. Green.  PX 7.  Mr. Green is an attorney who has practiced law in Alabama for 31 years in the areas of civil and commercial litigation.  PX 7 p. 1 ¶ 2. Mr. Green reviewed the pleadings in the case, including the October 2nd Memorandum Opinion and Order, as well as discovery and other materials.  PX 7 pp. 1-2, ¶ 4.  He also reviewed the billing records for Plaintiff's attorneys, looking at the number of hours expended by each attorney, as well as the pleadings and discovery related to those expenditures of time.  PX 7, p. 2 ¶ 6.  According to Mr. Green, "litigation such as this is protected and expensive in the best of circumstances, but it becomes more expensive when related litigation or ancillary legal proceedings become relevant, as has occurred in this case."  *Id.*  In Mr. Green's opinion, "the number of hours spent by each of the Wiggins Childs attorneys was reasonably necessary to maintain the prosecution of the action up through the Court's October, 2025 summary judgment order."  *Id.*  As such, based on these attorney declarations and the supporting billing records,

Plaintiff has presented abundant evidence of the reasonableness of the time spent by

Plaintiff's attorneys in the successful prosecution of the breach of contract claim.

### ii. The Reasonableness of the Hourly Rates

"A reasonable hourly rate is the prevailing market rate in the relevant legal

community for similar services by lawyers of reasonably comparable skills,

experience, and reputation." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292,

1299 (11th Cir. 1988)[3]; *Johnson v. City of Mobile*, 195 So.2d 903, 925-926 (Ala.

2015). In establishing the appropriate hourly rate, the fee applicant must provide

"more than an affidavit of the attorney performing the work." *Norman*, 836 F.2d at

1299. Rather, "[e]vidence of rates may be adduced through direct evidence of

charges by lawyers under similar circumstances or by opinion evidence." *Id.* "The

weight to be given to opinion evidence of course will be affected by the detail

contained in the testimony on matters such as similarity of skill, reputation,

experience, similarity of case and client, and breadth of the sample of which the

expert has knowledge." *Id.* Further, the Court "is itself an expert on the question and

---

[3] The Alabama Supreme Court has noted the similarities between the standards for attorney's fees and rates in state and federal court and has stated that "cases applying these methods should be construed consistently." *CBS Holdings* at p. 20, n. 4.

may consider its own knowledge and experience concerning reasonable and proper fees." *Id.* at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

In this case, Plaintiff's counsel has provided evidence to support their requested reasonable hourly rate from Plaintiff's counsel Rocco Calamusa, Wilson Green, a similarly experienced counsel not affiliated with Plaintiff's counsel's firm or this case, and by fee awards from other judges in this District and from other Districts. This evidence provides sufficient support for the rates sought in this case.

As noted in Rocco Calamusa's declaration the normal hourly billing rates for Plaintiff's counsel in this case are, Rocco Calamusa, Jr. $625, Kevin W. Jent $550, DG Pantazis $525. PX 6 p. 8 ¶ 16. These rates are in line with and based on previous fee awards, market rates, rates charged by other attorneys with comparable experience, and the work necessary to obtain a favorable outcome. *Id.* All three of Plaintiff's counsel have extensive experience in trial and appellate work and throughout their careers have been involved with, tried, briefed and argued a multitude of cases at the trial and appellate levels. PX 6 p. 4 ¶ 9.

Calamusa had practiced law for 33 years, since 1993, primarily in the area of employment litigation in individual, complex and class cases. He has been admitted to practice in the State of Alabama and in federal Courts throughout the state. He is also admitted to practice in the United States Court of Appeals for the Fifth and

Eleventh Circuits. PX 6 p. 1 ¶ 1-2. Calamusa has practiced all over the United States and has been admitted on a *pro hac* basis in numerous states. *Id.* He has represented plaintiffs in hundreds, if not thousands, of employment-related matters in courts throughout the country. PX 6 pp. 1-2 ¶ 2. He has practiced law at Wiggins Childs since 1993 and is currently a member/partner and a member of the Board of Managers. PX 6 p. 1 ¶ 1.

Kevin Jent has practiced law in the State of Alabama for 29 years, since 1997, primarily in the area of employment litigation in individual, class and complex cases. PX 6 p. 3 ¶¶ 6-7. He is a member of all federal courts in Alabama, along with the Fifth and Eleventh Circuit Courts of Appeals. *Id.* He has also practiced in Courts throughout the United States on a *pro hac* basis. *Id.* He has worked at Wiggins Childs since April 2002 and is currently a member/partner. *Id.*

DG Pantazis is also a partner/member at Wiggins Childs. PX 6 p. 4 ¶ 8. For the past 16 years he has practiced primarily in complex federal litigation regarding federal regulations, employment practices and consumer actions. *Id.* He has litigated cases in state and federal courts in Alabama, Georgia, Mississippi, Tennessee, Florida, New York, New Jersey, California, Illinois, Louisiana, Pennsylvania, and Arizona. *Id.* Prior to the granting of summary judgment in this case, Pantazis' involvement in the case included legal research, drafting discovery,

14

document review, technology protocols and implementation including ESI review, and motion practice. *Id.*

These requested rates have been recently awarded to Calamusa and Jent by another judge in the Northern District of Alabama. On August 13, 2025, Magistrate Judge Cornelius awarded Calamusa and hourly rate of $625 per hour and Jent a rate of $550 per hour in a wage and hour case where, like this case, Plaintiffs moved for and won a motion for summary judgment on an employment claim brought against a former employer. *See Wanjohi, et al., v. Pioneer Investment and Development, et al.,* 2:21-cv-00742-SGC (NDAL) Doc. 83. The request for fees and these hourly rates in *Wanjohi* were supported by the Declarations of Calamusa, Jent, and Birmingham attorney Heather Leonard. *Wanjohi* Docs. 74-1, 74-2, 74-3. These rates are similar to what Calamusa and Jent, along with others in the Wiggins Childs firm with comparable experience bill and have been previously awarded. PX 6 p. 8 ¶ 17.

DG Pantazis is seeking an hourly rate of $525 per hour for this single plaintiff contract litigation. PX 6 p. 8 ¶ 18. Pantazis has been awarded court-approved hourly rates as high as $900 per hour for class and complex litigation and he routinely bills a higher rate for complex and class litigation. PX 6 p. 8 ¶ 18. *See In Re Blue Cross Blue Shield Antitrust Litigation* (N.D. Al. MDL 2406, Doc. 3380). Representative cases reflecting Pantazis' experience are as follows: *Forward Momentum, LLC v.*

*Team Health, Inc*., 2022 U.S. Dist. LEXIS 158923; *Miller v. AutoZone*, (W.D. Tenn., Case No. 2:19-cv-02779 MSN-tmp); *King v. West Morgan-East Lawrence Water and Sewer Authority, et al*. (N.D. Ala., Case No. 5:17-cv-1833); *In re Riddell Concussion Reduction Litigation* (U.S. District Ct., District of NJ, Case No. 13-7585); *In re Blue Cross Blue Shield Antitrust Litigation* (N.D. AL., MDL No. 2406); *LaFleur et al v. Dollar Tree Stores, Inc.*, (E.D. Va. 2016, Case No. 2:2012cv00363). PX 6 pp 8-9 ¶ 18.

These rates have been reviewed by experienced Birmingham attorney Wilson Green. PX 7. As noted above, Green has reviewed the billing records, pleadings in this case, including the October 2, 2025, Memorandum Opinion and Order granting summary judgment, along with certain discovery and other case materials generated during the litigation. PX 7 p. 2 ¶ 4 & 6. Green is also personally familiar and has personal knowledge about the skill level of Plaintiff's counsel having litigated against them previously. PX 7 p. 2 ¶ 5. According to Green Plaintiff's counsel are "skilled advocates whose performance is at the top of the market." *Id.* Moreover, Green is a contemporary of Calamusa and Jent and the rates they are seeking ($625 and $550, respectively) are within the range of hourly rates charged by Green to clients in contract litigation similar to this case in this locality. *Id.* Green also testifies that the rate sought by Pantazis ($525) is also reasonable given his overall years of experience and his "particularized experience" in complex and commercial

litigation like this case. *Id.* Based on all of these factors, Green opines that the rates sought by Plaintiff's counsel.

Therefore, based on the declarations of Rocco Calamusa and Wilson Green, rates charged by attorneys in this District, fee awards for these attorneys from other courts, including a court in this District, and the excellent results obtained in this case on the breach of contract claim Plaintiff's counsel's requested fees are reasonable for the work that they performed on behalf of Mr. Fowler in this case.

### iii. The Other Peebles Factors

While the most important factors to consider when awarding fees are the hours spent, the reasonable hourly rates sought and the results obtained, as discussed above, the Court might also look at the other factors set out above to assist with determining reasonableness. *Pharmicia,* 915 So.2d at 552. The Alabama Supreme Court is clear that these are just factors that may be considered, but that "they are not an exhaustive list of specific criteria that must all be met." *Id.* at 553; *see also Moultrie*, 143 So.2d at 137 (refusing to reverse an award of attorney's fees where the appellant argued that only 3 of the *Peebles* factors were considered, the time spent, the success achieved, and the reasonable expenses incurred).

However, a review of these factors to weigh in favor of the award sought by Plaintiff. First, the nature and value of the subject matter of the litigation favors the fee sought. Plaintiff's counsel handled the entire litigation in federal court, engaging

in written and deposition discovery as well as a federal motion practice which led to the successful results. Without their efforts Plaintiff would not have had the same level of success. Moreover, Counsel used their years of experience, particularly their many years of working in federal and state civil litigation and employment law to obtain summary judgment through briefing on the breach of contract claim. Wilson Green's declaration speaks to the professional experience and reputation of Plaintiff's counsel, as does prior fee awards from other courts. An award of summary judgment for a Plaintiff in employment litigation is extremely difficult to obtain, and counsel's learning, skill and labor was crucial to the proper discharge of the case.

Plaintiff's counsel took on the representation of Plaintiff on a contingent basis, which meant they spent time and fronted expenses with the prospect of not being paid for these hours or expenses incurred unless they were successful with their claim. PX 6 p. 13 ¶ 23. Without this risk undertaken by counsel, it is highly unlikely that the same level of results would have been achieved.

As part of that contingent representation, Plaintiff is not a long-time or repeat client of counsel. PX 6 p. 12 ¶ 24. This factor justifies higher rates as compared to rates charged by defense or corporate counsel who often reduce or discount rates based on the long-standing relationship and probability of future work. *Id.* The litigation of this case was extensive and lasted for multiple years. By working on a

case in federal court for that period of time other opportunities for additional employment were precluded in order to spend the time, effort and resources needed to be successful in this case.

Based on the totality of these factors, especially the time spent, reasonable rates sought, the rates charged by others in the area, and the excellent results obtained on the breach of contract claim, the fees requested by Plaintiff are reasonable for this case and are due to be awarded by the Court.

### iv. Reasonable Expenses

Plaintiff is seeking reimbursement for case costs and expenses in the amount of $15.909.06. EX 6 p. 18 ¶ 36; EX C to PX 6. These expenses included deposition transcripts used in the summary judgment briefing, copying and printing fees, legal research needed and used for the summary judgment briefing and other motion practice prior to the entry of summary judgment. *Id.* The costs also include reasonable travel expenses incurred in taking the depositions of Defendant's witnesses and executives in Virginia. *Id.* These expenses are fair and reasonable and were all necessary for the successful outcome obtained in this case. EX 6 pp. 17-18 ¶ 37. Therefore, Plaintiff is due to be awarded the full amount of the expenses sought.

### v. The Lodestar or Time Consumed

Based on the reasonable hours worked and the reasonable rates sought, the lodestar or time consumed amount sought by Plaintiff in this case is $332,632.50 in attorney's fees and $15,909.06 in costs and expenses for a total amount of $348,541.56. PX 6 p. 18 ¶ 38.

**<u>CONCLUSION</u>**

Based on the above, Plaintiff requests that a Final Judgment be entered in his favor in this case in the amount of **$3,616,877.63**. This amount includes damages for the breach of contract in the form of the Termination Payout and interest in the amount of $3,507,452.05, health insurance benefits in the amount of $26,340.00, attorney's fees in the amount of $332,632.50, and expenses in the amount of $15,909.06, less the setoff amount and interested due to Defendants in the amount of $265,455.98 for their counterclaim.

Respectfully submitted,
*/s/ Kevin W. Jent*
RoccoCalamusa, Jr.
D.G. Pantazis, Jr.
Kevin W. Jent

20

Wiggins, Childs, Pantazis,

 Fisher & Goldfarb, LLC

The Kress Building

301 – 19th Street North

Birmingham, AL 35203

Telephone: (205) 314-0500

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 1st day of June, 2026, a true and correct copy of the foregoing has been filed with the Court's CM/ECF Filing system, and served upon the following counsel of record:

Raymond S. Franks, II

Steven R. Ruby

CAREY, DOUGLAS, KESSLER & RUBY, PLLC

707 Virginia Street, #901

Charleston, WV 25301

Daniel J. Fortune

2201 4th Ave. N.

Birmingham, AL 35203

*/s/ Kevin W. Jent*

OF COUNSEL